UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
MENDEL REIZES AND
YEHOSHUA YUSEWITZ
on behalf of themselves and
all other similarly situated consumers

                          Plaintiffs,

            -against-


SETERUS, INC.

                          Defendant.


-----------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.      Plaintiffs Mendel Reizes and Yehoshua Yusewitz seek redress for the illegal practices of Seterus, Inc. concerning the collection of debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.      Plaintiffs are citizens of the State of New York who reside within this District.

3.      Plaintiffs are consumers as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiffs is a consumer debt.

4.      Upon information and belief, Defendant's principal place of business is located in Beaverton, Oregon.

5.      Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

6.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### Jurisdiction and Venue

7.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### Allegations Particular to Mendel Reizes and Yehoshua Yusewitz

9.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiffs.

10.    The alleged debt was an HSBC home loan, which fell into default status sometime in 2009.

11.    Defendant obtained this loan after it went in to default. The default on this loan occurred prior to the Defendant's servicing of the loan.

12.    The actions of Defendant are covered under the FDCPA since the debt at issue was acquired and serviced by defendant after the customer defaulted on the loan in question.

13.    Upon information and belief, on a date better known by Defendant, the Creditor, HSBC Bank, assigned the defaulted loan to Defendant Seterus, Inc. for collection.

14.    The Defendant then embarked on its collection efforts towards the Plaintiffs; but rather than mailing out any loan statements and collection letters, directly to Plaintiffs' above mentioned address, Defendant Seterus instead, mailed all notices to HSBC Bank.

15.    At some point, the Plaintiffs became aware of the Defendant's action of mailing statements to the bank, instead of to the Plaintiffs themselves, so the Plaintiffs contacted

the Defendant and requested that it send any and all statements to the Plaintiffs' address.

16.     As soon as the Defendant became aware that it had mailed the Plaintiffs' loan statements, including the Defendant's initial communication to a wrong address, it was required to promptly send out a proper validation notice to the correct address.

17.     The plain language of the FDCPA requires debt collectors to "send the consumer a written notice . . ." 15 U.S.C. § 1692g(a). If such notice is sent to an address where the consumer actually lives, this is obviously sufficient to meet the statutory requirements.

18.     However, in this case, the written notice was mailed to the creditor, instead of the debtors themselves; so essentially, it was never sent to the Plaintiffs.  Rather, it has been sent to an improper address for the Plaintiffs.[1]

19.     Thus, the plain language requires that the debt collector send a validation notice to a valid and proper address where the consumer may actually receive it.

20.     If the debt collector is aware that the validation notice was sent to a wrong address, the debt collector has not complied with the plain language of the statute.

21.     The validation notice in this case was sent to an incorrect address, the plain language and purpose of the FDCPA requires that the debt collector cease all collection activity until the debt collector sends a new and proper validation notice reasonably calculated to reach the consumer.

22.     The Defendant knew that it had sent all the collection notices to a wrong address, yet at no point did Plaintiffs ever receive a collection letter that contained their statutory rights

---

[1] Wilson v. NACM-Or Serv. Co., 2013 U.S. Dist. LEXIS 178234, 17-18, 2013 WL 6780627 (D. Or. Dec. 19, 2013). ("Generally, when a debt collector sends a letter to a debtor regarding a debt, there is a presumption that 'communication with' the debtor has taken place. *Horvath v. Premium Collection Servs., Inc.*, No. CV-09-2516-PHX-GMS, 2010 U.S. Dist. LEXIS 47557, 2010 WL 1945717, at *4 (D Ariz May 13, 2010), citing *Mahon*, 171 F3d at 1201. "This presumption, however, can be rebutted by showing that the initial letter 'was sent to an incorrect address and returned as undeliverable.'" Id, quoting *Campbell v. Credit Bureau Systems, Inc.*, Civil Action No. 08-CV-177-KSF, 2009 U.S. Dist. LEXIS 5762, 2009 WL 211046, at *12 (ED Ky Jan. 27, 2009). In other words, "when a written notice is returned as undeliverable, it has not actually been sent to the consumer. Rather, it has been sent to an improper address for the consumer." *Johnson v. Midland Credt Mgmt. Inc.*, No. 1:05 CV 1094, 2006 U.S. Dist. LEXIS 60133, 2006 WL 2473004, at *12 (ND Ohio Aug. 24, 2006).")

as mandated under 15 U.S.C. § 1692g.[2]

23.     The Defendant did in fact mail out a letter to the Plaintiffs' proper address on May 30,

        2016, yet the said letter was void of the Plaintiffs' statutory rights.

24.     1692g of the FDCPA states:

> (a) **Within five days after the initial communication** with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the

---

[2] Johnson v. Midland Credit Mgmt. Inc., 2006 WL 2473004 (N.D. Ohio Aug. 24, 2006). (Since the post office had returned as undeliverable the initial dun containing the validation notice which the debt collector had attempted to send to the consumer, the collector violated § 1692g(a) when it failed to send an effective validation notice once it thereafter communicated with the consumer at the proper address; a debt collector who knows that its initial validation notice was not received by the consumer cannot claim to have "sent" the notice to the consumer as required by § 1692g(a).); Ponce v. BCA Fin. Servs., Inc., 467 Fed. Appx. 806 (11th Cir. 2012). (While the plain language of the statute might not require the debt collector to ensure actual receipt of the written notice, the plain language does require the debt collector to send the written notice to a valid and proper address where the consumer may actually receive it. We cannot say the district court erred in determining that the September 2009 telephone call, and not the November 18 letter, was the initial communication.)

name and address of the original creditor, the debt collector shall
cease collection of the debt, or any disputed portion thereof, until
the debt collector obtains verification of the debt or any copy of a
judgment, or the name and address of the original creditor, and a
copy of such verification or judgment, or name and address of the
original creditor, is mailed to the consumer by the debt collector.

(c) The failure of a consumer to dispute the validity of a debt
under this section may not be construed by any court as an
admission of liability by the consumer.
(emphasis added)

25.  The Defendant, within five days of it mailing out the May 30, 2016 collection letter to

the Plaintiffs, was meant to send them such a notice.

26.  The Defendant violated 15 U.S.C. §§ 1692g and 1692g(a) of the FDCPA for failing to

provide the Plaintiffs with a written notice of their rights within five days of its initial

communication with them.

27.  HSBC Bank sent Plaintiff a letter (attached as exhibit C) dated February 3, 2010 said

notice stated "the total amount due of $3,533.96 PLUS ANY ADDITIONAL

PAYMENTS, FEES AND LATER CHARGES THAT ACCUMULATE DURING

THIS PERIOD, must be received within 30 days from the date of this letter. This must

be in the form of certified funds only. If you do not cure this default within the specified

time period your obligation for payment of the entire unpaid balance of the loan will be

accelerated and become due and payable immediately."

28.  HSBC Bank accelerated the note and mortgage on March 6, 2010.  See. Deutsche Bank

Natl. Tr. Co. v. Royal Blue Realty Holdings, Inc., 2017 NY Slip Op 01979, ¶ 2, 148

A.D.3d 529, 530, 48 N.Y.S.3d 597, 597 (App. Div.). ("The letters from plaintiff's

predecessor-in-interest provided clear and unequivocal notice that it "will" accelerate the

loan balance and proceed with a foreclosure sale, unless the borrower cured his defaults

within 30 days of the letter. When the borrower did not cure his defaults within 30 days, all sums became immediately due and payable and plaintiff had the right to foreclose on the mortgages pursuant to the letters. At that point, the statute of limitations began to run on the entire mortgage debt.")

29.  On June 1, 2010 HSBC Bank filed a foreclosure and attached the February 3, letter to the foreclosure complaint which additionally had the acceleration date as March 6, 2010. (See exhibit B).

30.  The foreclosure that was commenced on June 1, 2010 was dismissed by the court on August 25, 2014. The dismissal of the foreclosure did not revoke HSBC's election to accelerate the debt.  See EMC Mortg. Corp. v. Patella, 279 A.D.2d 604, 606, 720 N.Y.S.2d 161, 162-63 (App. Div. 2001) ("Although a lender may revoke its election to accelerate the mortgage, the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year Statute of Limitations period subsequent to the initiation of the prior action (see, Federal Natl. Mtge. Assn. v Mebane, supra, at 894). Consequently, this foreclosure action is time-barred (see, CPLR 213 [4])."

31.  For good reason, Plaintiffs had defaulted under the terms of the mortgage and note by failing to make the monthly mortgage installment payments, and as a consequence, HSBC elected to accelerate the entire mortgage debt on March 6, 2010.

32.  It is well established that even if a mortgage is usually payable in monthly installments, once the entire amount becomes due, the mortgage debt is accelerated and the Statute of Limitations begins to run on the entire debt." See EMC Mtge. Corp. v Patella, 279

AD2d 604, 605 (2nd Dept. 2001); <u>Wells Fargo Bank, N.A. v Burke</u>, *supra* 94 AD3d at 982; *see also* <u>Lavin v Elmakiss</u>, 302 AD2d 638, 639(3'd Dept. 2003); <u>Zinkerv Makler</u>, 298 AD2d 516, 517 (3rd Dept. 2003).

33. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect barred the Creditor, or any debt collector, from taking or threatening to take legal action to make the Plaintiffs pay this debt any time after March 6, 2016.

34. New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

35. On or about May 30, 2016 Defendant sent the Plaintiffs a collection letter seeking to collect the time-barred debt of $254,108.89.

36. Defendant knew that it was barred from seeking a new foreclosure action on this time barred debt.

37. Said letter stated in pertinent part as follows: "If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence)."

38. The Plaintiffs understood this letter to mean that if this delinquency is not resolved, any and all available actions permitted under law to collect this debt can be pursued, including but not limited to, continued collection efforts filling of a legal action, or accrual of legal fees.

39. This is false, since the loan became time-barred on March 6, 2016 and therefore, the filling of a legal action may <u>not</u> be pursued.

40.     The above mentioned statement is false, since the loan was a time-barred debt and the filling of a legal action is not permitted under the law.

41.     This above mentioned statement is false as other than sending a non-demanding payment letter which does not misrepresent the status or enforceability of the debt; no other available actions were permitted under the law to collect this debt.

42.     Defendant Seterus could not accumulate any legal fees with regard to this time-barred debt and certainly could not charge the Plaintiffs for the accrual of any such forbidden legal fees.

43.     The May 30, 2016 letter additionally contained several deceptive statements and omitted important mandatory disclosures, including § 2-191 of the Rules of the City of New York's notification requirement for time-barred debts.

44.     The May 30, 2016 letter said nothing about when the debt was incurred, and it contained no hint that the six-year statute of limitations applicable in New York had long since expired.

45.     On March 6, 2010, HSBC accelerated the entire debt making the debt time-barred six years from March 6, 2010.

46.     In the State of New York, the statute of limitations to sue on a mortgage or the note is six years after the demand of the entire amount due.

47.     Here, Defendant Seterus had waited after the entire loan had become time barred to threaten suit on this debt.

48.     Thus, the Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f by misrepresenting the legal status and by threatening to file a time-barred suit, making it liable to the Plaintiffs.

49.    "The statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment, or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated." [3]

50.    Once a mortgage debt is accelerated by a demand for the entire amount of the loan, the borrower's right to make monthly installments ceases, all sums becomes immediately due and payable, and the six-year statute of limitations begins to run on the entire mortgage debt.[4]

51.    New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

52.    The unpaid installments and the entire loan that became due on March 6, 2010 and the debt became time barred on March 6, 2016.

53.    The Statute of Limitations to collect on this debt expired on March 6, 2016, therefore, misrepresenting the legal status and threatening legal action on this time-barred debt is a violation of the FDCPA.

54.    Upon information and belief, the Defendant knew that this deceptive debt collection technique would be particularly effective in pressuring unsophisticated consumers into settling debts, even those that would otherwise be time-barred.

55.    Moreover, upon information and belief, the Defendant knew that if it tricked a consumer into making just one payment on a stale, time-barred debt, the statute of limitations would restart.

---

[3] In re Strawbridge, 2012 U.S. Dist. LEXIS 29751, 2012 WL 701031 [SDNY 2012], citing Plaia v Safonte, 45 AD3d 747, 748, 847 N.Y.S.2d 101 [2d Dept 2007]; Zinker v Makler, 298 AD2d 516, 517, 748 N.Y.S.2d 780 [2d Dept 2002]; Notarnicola v. Lafayette Farms, Inc., 288 AD2d 198, 199, 733 NYS2d 91 [2d Dept 2001]; EMC Mtge. Corp. v Patella, 279 AD2d 604, 605, 720 NYS2d 161 [2d Dept 2001]; Loiacono v. Goldberg, 240 AD2d 476, 477, 658 NYS2d 138 [2d Dept 1997])
[4] See Federal National Mortgage Assn v Mebane, 208 AD2d 892, 894, 618 NYS2d 88 [2d Dept 1994]; Clayton Nat'l, Inc. v Guldi, 307 AD2d 982, 763 N.Y.S.2d 493 [2d Dept 2003]).

56.   When collecting on a time-barred debt, a debt collector must not misrepresent the legal status of the debt in any way.

57.   When collecting on a time-barred debt, a debt collector must inform the consumer that (a) the collector cannot sue to collect the debt; and (b) providing a partial payment would revive the Defendant's ability to sue to collect the balance.

58.   The Defendant threatened and attempted to collect on a time-barred debt, whose Statute of Limitations had admittedly already run out.

59.   The language, "If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence)." is untrue and is a false threat of legal action on time-barred debt.[5]

60.   Upon reading the said letter, the Plaintiffs believed, as would the unsophisticated debtor, that they had a legal obligation to pay the alleged debt as Defendant was demanding payment.

61.   The said letter falsely implies that the alleged debt is legally enforceable by making a demand for payment from the Plaintiffs.

62.   It is part of the Defendant's pattern and practice to send and cause the sending of letters, such as the May 30, 2016 letter, that seek to collect time-bared debts and to not disclose that the debts are in fact time barred, and therefore, legally unenforceable.

63.   The Federal Trade Commission ("FTC") has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a debt collector tells a consumer that he owes money and demands

---

[5] *Crawford v. LVNV Funding, LLC,* 758 F.3d 1254, 2014 U.S. App. LEXIS 13221, 59 Bankr. Ct. Dec. 205, 25 Fla. L. Weekly Fed. C 92 (11th Cir. Ala. 2014)

payment, it may create the misleading impression that the debt collector can sue the consumer in court to collect that debt."

64.     On January 30, 2013, the FTC issued its report, The Structure and Practices of the Debt Buying Industry, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf.  The report reaffirms its position in the United States of America v. Asset Acceptance, LLC, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC- 12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

65.     Courts have also held that even a debt collector's mere "settlement" offer made to a consumer on a time-barred debt is misleading.[6]

66.     The language in the said letter suggests that the debt is recent enough to be legally enforceable. All circuit courts that have addressed this issue have even found the mere offer of a settlement on a time barred debt to be in violation of the FDCPA. See Daugherty v. Convergent Outsourcing, Inc., No. 15-20392, 2016 U.S. App. LEXIS 16531, at *1-2 (5th Cir. Sep. 8, 2016) ("The issue presented by this appeal is whether a collection letter for a time-barred debt containing a discounted "settlement" offer—but silent as to the time bar and without any mention of litigation—could mislead an unsophisticated consumer to believe that the debt is enforceable in court, and therefore violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. After receiving such a letter, the plaintiff credit card debtor sued the defendant debt

---

[6] See e.g., McMahon v. LVNV Funding, LLC, 744 F.3d 1010 (7th Cir. 2014).

collectors pursuant to the FDCPA. The district court dismissed the complaint, holding that efforts to collect time-barred debts without threatening or filing suit do not violate the FDCPA. We reverse. While it is not automatically unlawful for a debt collector to seek payment of a time-barred debt, a collection letter violates the FDCPA when its statements could mislead an unsophisticated consumer to believe that her time-barred debt is legally enforceable, regardless of whether litigation is threatened." Buchanan v. Northland Grp., Inc., 776 F.3d 393, 397 (6th Cir. 2015) (same) McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1020 (7th Cir. 2014). (same).

67.  Defendant could have taken the steps necessary to bring its actions within compliance with the FDCPA, but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

68.  Upon information and belief, Defendant sent a written communication, such as the May 30, 2016 letter to at least 50 natural persons in the State of New York within one year of the date of this Complaint.

69.  Section 1692e of the FDCPA states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of –
>
> (A) the character, amount, or legal status of any debt[.]"

70.  Sections 1692e(5) and 1692e(10) state that a debt collector cannot "threaten to take any action that is not intended to be taken" or use "any false representation or deceptive means to collect or attempt to collect any debt."

71.  The Defendant misled the Plaintiffs as to what possible action might be legally taken

against them and deceptively used this threat in attempting to collect on this alleged debt.

72. In so doing, the Defendant preyed upon the ignorance of unsophisticated consumers.

73. By employing the tactics it did, the Defendant played upon and benefitted from the probability of creating a deception.

74. Honest disclosure of the legal unenforceability of the collection action due to the time-lapse since the debt was incurred would have foiled Defendant's efforts to collect on the debt.

75. By threatening to sue the Plaintiffs on the alleged debt, Defendant violated §§ 1692e(2)(A) and 1692(10) by threatening legal action, Defendant implicitly represented that it could recover this debt with a lawsuit, when in fact it cannot properly do so.

76. Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA.

77. Said letter provided a false, deceptive, or misleading representation or means in connection with the collection of any debt; the false representation of the character, amount, or legal status of any debt; and for the threat to take any action that cannot legally be taken, or that is not intended to be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).[7]

---

[7] Buchanan v. Northland Grp., Inc., 776 F.3d 393 (6th Cir. 2015). (A misrepresentation about the limitations period is a "straightforward" violation of § 1692e(2)(A). The failure to disclose that partial payment on a time-barred debt would renew the creditor's ability to sue could mislead a consumer into paying and digging herself into a deeper hole. An unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. This would not be true, since some payment is worse than no payment, as the general rule in Michigan is that partial payment restarts the statute of limitations clock, giving the creditor a new opportunity to sue for the full debt. In response to the argument that the court's interpretation would require debt collectors to give legal advice to every debtor about the statute of limitations, the court stated that "this is not a herculean task," as demonstrated by the fact that the collection agency had changed its letters to make the following disclosure under applicable circumstances: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding L.L.C. will not sue you for it, and LVNV Funding L.L.C. will not report it to any credit reporting agency."), McMahon v. LVNV Funding, L.L.C., 744 F.3d 1010 (7th Cir. 2014). (The court held that the consumers stated claims for relief under §§ 1692e and 1692f where the defendants sent dunning letters that did not disclose that the debts

78.    Said letter stated in pertinent part as follows: "If this matter is not resolved within 90

days from the date this notice was mailed, we may commence legal action against you

(or sooner if you cease to live in the dwelling as your primary residence)."

79.    Said language is untrue and is a false threat of filling a legal action on time-barred debt.[8]

80.    Said language is false because any or all available actions permitted under law to collect

this debt do not include the filling of a legal action or accrual of legal fees.

81.    The misrepresentation of the debt collector's ability to file a legal action on a time-

barred debt is a violation of the FDCPA.

82.    At the time that HSBC transferred the said home loan to the Defendant, HSBC was

aware that the Plaintiffs were being represented by counsel, as HSBC itself, mailed all

statements and notices directly to Adam J. Fishbein, the Plaintiffs' attorney.   (see

attached sample exhibit)

83.    The fact that HSBC's records reflected that the Plaintiffs were being represented by

counsel, surely the Defendant was also aware that Plaintiffs were represented by

counsel; yet the Defendant ultimately communicated directly with the Plaintiffs in the

May 30, 2016 collection notice.

84.    Section 1692b of the FDCPA provides:

> Any debt collector communicating with any person other than the
> consumer for the purpose of acquiring location information about
> the consumer shall –

---

were time-barred and that made an "offer to settle" at a stated percentage savings off the current balance because, even without
an actual threat of suit, "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt
implies that the debt is legally enforceable.") Rawson v. Source Receivables Mgmt., L.L.C., 2012 WL 3835096 (N.D. Ill. Sept.
4, 2012) (complaint alleging that a dunning letter implied the debt was legally enforceable when it was actually barred by the
statute of limitations stated a claim under the FDCPA; defendants' letter that threatened "further collection efforts" and
encouraged the plaintiff "to make arrangements for payment" could arguably lead an unsophisticated debtor to believe that the
debt was legally enforceable)
[8] Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 2014 U.S. App. LEXIS 13221, 59 Bankr. Ct. Dec. 205, 25 Fla. L. Weekly
Fed. C 92 (11th Cir. Ala. 2014)

(6) After the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector.

Section 1692c of the FDCPA provides:

(a)   COMMUNICATION   WITH   THE   CONSUMER GENERALLY.  Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt --

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

85.   The Defendant's conduct aggravated and harassed the Plaintiffs.

86.   The Defendant knew or should have known that its actions violated the FDCPA.

87.   Plaintiffs suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

88.   Plaintiffs suffered actual harm by being the target of the Defendant's misleading debt collection communications.

89.   Defendant violated the Plaintiffs' right not to be the target of misleading debt collection communications.

90.   Defendant violated the Plaintiffs' right to a truthful and fair debt collection process.

91.   Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiffs' alleged debt.

92.   Defendant's communications were designed to cause the debtor to suffer a harmful

disadvantage in charting a course of action in response to Defendant's collection efforts.

93.     The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiffs in a manner that deprived them of their right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

94.     These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

95.     As an actual and proximate result of the acts and omissions of Seterus, Inc., Plaintiffs have suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which they should be compensated in an amount to be established by a jury at trial.

### AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiffs on behalf of themselves and the members of a class, as against the Defendant.*

96.     Plaintiffs re-state, re-allege, and incorporates herein by reference, paragraphs one (1) through ninety five (95) as if set forth fully in this cause of action.

97.     This cause of action is brought on behalf of Plaintiffs and the members of three classes.

98.     Class A consists of all persons whom Defendants' records reflect resided in the State of New York, who received communications from Defendant within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) the Defendant's initial letter was mailed out to a wrong address; (b) the Defendant was

supposed to, within five days of its contacting the Plaintiffs to send a validation notice; (c) the Defendant ultimately sent a collection letter to the Plaintiffs, which was however, void of the Plaintiffs' statutory rights, in violation of 15 U.S.C. §§ 1692g and 1692g(a).

99. Class B consists of (a) all individuals who have mailing addresses within the State of New York; (b) who within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiffs; (d) regarding a debt that was time-barred by the applicable Statute of Limitations; and (e) which was not returned by the postal service as undelivered; and (f) the Plaintiffs assert that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

100. Class C consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter, (a) bearing the Defendant's letterhead in substantially the same form as the letters sent to the Plaintiffs on May 30, 2016; (b) the collection letter was sent to a consumer seeking payment of a personal debt; and (c) the collection letter was not returned by the postal service as undelivered; and (d) the Defendant violated 15 U.S.C. §§ 1692b(6) and 1692c(a)(2) of the FDCPA for communicating with the Plaintiffs though the Defendant had the knowledge that Plaintiffs were represented by an attorney.

101. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A. Based on the fact that a form collection letter is at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

B. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

C. The only individual issue is the identification of the consumers who received such collection letters (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

D. The claims of the Plaintiffs are typical of those of the class members. All are based on the same facts and legal theories.

E. The Plaintiffs will fairly and adequately represent the class members' interests. The Plaintiffs has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiffs' interests are consistent with those of the members of the class.

102. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

103. If the facts are discovered to be appropriate, the Plaintiffs will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

104.   Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

105.   The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

106.   Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiffs and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiffs, respectfully request preliminary and permanent injunctive relief, and that this Court enter judgment in their favor and against the Defendant and award damages as follows:

      A.   Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

      B.   Attorney fees, litigation expenses and costs incurred in bringing this action; and

      C.   Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
May 24, 2017

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiffs**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiffs request trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein\_\_\_\_
Adam J. Fishbein (AF-9508)

# EXHIBIT A

PRESORTED
FIRST CLASS MAIL
U.S. POSTAGE PAID
VE LTD



PO Box 1077; Hartford, CT 06143-1077

May 30, 2016



1-769-19309-0000552-001-01-000-000-000-000 *L732K*
REIZES, MENDEL
YUSEWITZ, YEHOSHUA
1615 CARROLL ST
BROOKLYN NY 11213-5409

30    EJGJIPi    ii2i3

# seterus™

PO Box 1077; Hartford, CT 06143-1077

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Payments**
PO Box 11790; Newark, NJ 07101-4790

**Correspondence**
PO Box 1077; Hartford, CT 06143-1077

**Phone**
866.570.5277

**Fax**
866.578.5277

**Website**
www.seterus.com

May 30, 2016

1-769-19309-0000552-001-01-000-000-000-000  *L732K*
REIZES, MENDEL
YUSEWITZ, YEHOSHUA
1615 CARROLL ST
BROOKLYN NY 11213-5409

RE: Loan No.: 29749246

## YOU COULD LOSE YOUR HOME.
## PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of May 30, 2016, your home loan is 2310 days in default. Under New York State
Law, we are required to send you this notice to inform you that you are at risk of
losing your home. You can bring the loan up-to-date ("cure this default") by
making the payment of $254,108.89 by 07/04/2016.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home. Attached to this
notice is a list of government-approved housing counseling agencies in your area
that provide free or very low-cost counseling. You should consider contacting one
of these agencies immediately. These agencies specialize in helping homeowners
who are facing financial difficulty. Housing counselors can help you assess your
financial condition and work with us to explore the possibility of modifying your
loan, establishing an easier payment plan for you, or even working out a period of
loan forbearance. If you wish you may also contact us directly at 866.570.5277 and
ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we
encourage you to take immediate steps to try to achieve a resolution. The longer
you wait, the fewer options you may have.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN
ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT
THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard,
Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY**: 1411669, 1411665, 1411662. **TENNESSEE**: This collection agency is licensed
by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

L732K

REIZES, MENDEL
YUSEWITZ, YEHOSHUA
May 30, 2016
Loan number: 29749246



If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence).

If you need further information, please call the  toll-free helpline at  or visit the Department's website at .

If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Sincerely,


Seterus, Inc.



## Financial Counseling Agencies

Seterus, Inc. is not affiliated with, nor does it recommend, endorse or receive compensation from, any of the agencies listed below. For a complete list of agencies available, please go to http://www.dfs.ny.gov/consumer/mortg_nys_np_counseling_agencies.htm.

### Adirondack Mountains Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Clinton Essex Franklin Fulton Hamilton Herkimer Lewis Warren Washington | Friends of the North Country | 1 Mill St., Keeseville, NY 12944 | 518-834-9606 |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 |
| | Consumer Credit Counseling Service of the North Country | 215 Washington St. Suite 005, Watertown, NY 13601 | 1-877-412-2227 |
| | Homefront Development Corp. | 568 Lower Allen St., Hudson Falls, NY 12839 | 518-747-8250 |
| | Home Headquarters, Inc. | 990 James St., Suite 1, Syracuse, NY 13203 | 315-474-1939 |

### Capital-Saratoga Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Albany Rensselaer Saratoga Schenectady | Affordable Housing Partnership | 255 Orange St., Albany, NY 12210 | 518-434-1730 |
| | United Tenants of Albany | 33 Clinton Ave., Albany, NY 12207 | 518-436-8997 |
| | Troy Rehabilitation and Improvement Program (TRIP) | 415 River St., Troy, NY 12180 | 518-690-0020 |
| | Consumer Credit Counseling Service of the Capital Region | 2 Computer Drive West, Albany, NY 12205 | 1-877-412-2227 |
| | Better Neighborhoods, Inc. | 986 Albany St., Schenectady, NY 12307 | 518-688-0289 |

### Catskill Mountains Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Delaware Greene Sullivan Ulster | Delaware Opportunities, Inc. | 35430 State Hgwy. 10, Hamden, NY 13782 | 607-746-1650 |
| | Catskill Mountain Housing Development Corp. | 448 Main St., Catskill, NY 12414 | 518-943-6700 ext. 14 |
| | Rural Sullivan Housing Corp. | 6 Pelton St., Monticello, NY 12701 | 845-794-0348 |
| | Rural Ulster Preservation Company (RUPCO) | 301 Fair St., Kingston, NY 12401 | 888-377-7731 |
| | Clearpoint Financial Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-877-412-2227 |

### Central Leatherstocking Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Broome Chenango Madison Montgomery Oneida Otsego Schoharie | Metro Interfaith Housing Council | 21 New St., Binghamton, NY 13903 | 607-772-6766 |
| | Clearpoint Financial Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-877-412-2227 |
| | Home Headquarters, Inc. | 990 James St., Suite 1, Syracuse, NY 13203 | 315-474-1939 |
| | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 |
| | Northeast Hawley Development Corp. | Development Corp. 101 Gertrude St., Syracuse, NY 13202 | 315-425-1032 |

## Chautauqua-Alleghany Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Allegany Cattaraugus Chautauqua | ACCORD | 84 Schuyler St., Belmont, NY 14813 | 585-268-7605 |
| | Belmont Housing Resources | 1195 Main Street, Buffalo, NY 14209 | 716-884-7791 |
| | Neighborhood Housing Services of Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 |
| | The Housing Council | 75 College Ave., 4th Floor, Rochester, NY 14607 | 585-546-3700 ext. 3015 |
| | Chautauqua Opportunities | 402 Chandler, Dunkirk, NY 14048 | 716-661-9430 |

## Finger Lakes-Wine Country Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Cayuga Chemung Cortland Livingston Monroe Onondaga Ontario Schuyler Seneca Steuben Tioga Tompkins Wayne Yates | Arbor Housing and Development | 16 W. William St., Bath, NY 14810 | 607-776-7664 |
| | Home Headquarters, Inc. | 990 James St., Suite 1, Syracuse, NY 13203 | 315-474-1939 |
| | The Housing Council | 75 College Ave., 4th Floor, Rochester, NY 14607 | 585-546-3700 ext. 3015 |
| | Community Action in Self Help | 48 Water St., Lyons, NY 14489 | 315-946-6992 |
| | Catholic Charities of Chemung | 215 East Church St., Suite 101, Elmira, NY 14901 | 607-734-9784 |

## Hudson Valley Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Columbia Dutchess Orange Putnam Rockland Westchester | Housing Resources of Columbia County, Inc. | 252 Columbia St., Hudson, NY 12534 | 518-822-0707 |
| | Hudson River Housing | 291 Mill St., Poughkeepsie, NY 12601 | 845-454-9288 |
| | Orange County Rural Development Advisory Corp. | 59b Boniface Drive, Pine Bush, NY 12566 | 845-713-4568 |
| | Putnam County Housing Corp. | 11 Seminary Hill Rd., Carmel, NY 10512 | 845-225-8493 |
| | Housing Action Council | 55 South Broadway, Tarrytown, NY 10591 | 914-332-4144 |

## Long Island Region

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Nassau Suffolk | American Debt Resources, Inc. | 248C Larkfield Road, East Northport, NY 11731 | 1-800-498-0766 |
| | Long Island Housing Partnership, Inc. | 180 Oser Ave., Hauppauge, NY 11788 | 631-435-4710 |
| | CHHAYA | 37-43 77th St., Jackson Heights, NY 11372 | 718-478-3848 |
| | GreenPath Debt Solutions | 300 Garden City Plaza, Suite 220, Garden City, NY 11530 | 888-776-6738 |
| | North Fork Housing Alliance | 110 South St., Greenport, NY 11944 | 631-477-1070 |

## New York City

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| New York (Manhattan) | AAFE Community Development Fund, Inc. | 111 Division St., New York, NY 10002 | 212-964-2288 |
| | MHANY Management, Inc. | 2-4 Nevins St., Brooklyn, NY 11217 | 718-246-8080 ext 203 |
| | Grow Brooklyn, Inc. | 1474 Myrtle Ave., Brooklyn, NY 11237 | 718-418-8232 ext. 206 |
| | Parodneck Foundation | 121 6th Ave., Suite 501, New York, NY 10013 | 212-431-9700 ext 391 |
| | GreenPath Debt Solutions | One Penn Plaza, Suite 2108, New York, NY 10119 | 866-285-4059 |

**Niagara Frontier Region**



| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Erie<br>Genesee<br>Niagara<br>Orleans<br>Wyoming | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685 OR 716-712-2060 |
| | Belmont Housing Resources | 1195 Main St., Buffalo, NY 14209 | 716-884-7791 |
| | Buffalo Urban League | 15 Genesee Street, Buffalo, NY 14203 | 716-250-2445 |
| | Neighborhood Housing Services of Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 |
| | The Housing Council | 75 College Ave., 4th Floor, Rochester, NY 14607 | 585-546-3700 |

**Thousand Islands-Seaway Region**

| Counties in Region | Agencies in Region | Address | Phone |
|---|---|---|---|
| Jefferson<br>Oswego<br>St. Lawrence | Home Headquarters, Inc. | 990 James St., Suite 1, Syracuse, NY 13203 | 315-474-1939 |
| | Consumer Credit Counseling Service of the North Country | 215 Washington St. Suite 005, Watertown, NY 13601 | 1-877-412-2227 |
| | Oswego Housing Development Council, Inc. | 2971 County Rte. 26, Parish, NY 13131 | 315-625-4520 |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 |
| | North Country Housing Council | 19 Main St., Canton, NY 13617 | 315-386-8576 |

# EXHIBIT B

Text Viewer

03-06-10                          MSP LETTERWRITER ACTIVITY FOR MONTH OF 02
LOAN=   5631440    DATE=02-03 USER=CPI KEY=XC381 VERS=047 TITLE=DEMAND/MAILING ADDRE
LINES-PER-PAGE=NO CONDITIONS=2
XC381

                        PLEASE NOTE THAT THIS IS AN ATTEMPT TO
                        COLLECT A DEBT AND ANY INFORMATION
                        OBTAINED WILL BE USED FOR THAT PURPOSE.

February 03, 2010
Mendel Reizes
Yehoshua Yusewitz
1615 Carroll Street
Brooklyn, NY 11213
Dear Mendel Reizes and Yehoshua Yusewitz :
NOTE: __IF_YOU_ARE_CURRENTLY_PROTECTED_BY_THE_FILING_OF_A_PETITION
IN_BANKRUPTCY,_THE_FOLLOWING_NOTICE_IS_FOR_INFORMATION_PURPOSES
ONLY_AND_SHOULD_NOT_BE_CONSIDERED_AS_AN_ATTEMPT_TO_COLLECT_THE_DEBT.
Subject: Loan Account Number 563144-0
            Property Address 1615 Carroll Street
                             Brooklyn NY 11213
This shall serve as formal notice that you are presently in default
under the terms of your Note and Security Instrument/Deed of Trust
securing the property referenced above. Specifically, you have
failed to make the monthly payments on this Note as agreed.
To cure the default, the total amount due of $ 6,533.96 PLUS ANY
ADDITIONAL PAYMENTS, FEES AND LATE CHARGES THAT ACCUMULATE DURING
THIS PERIOD, must be received within 30 days from the date of this
letter. This must be in the form of Certified Funds (Cashier's
Check, Certified Check or Money Order) only.
If you do not cure this default within the specified time period,
your obligation for payment of the entire unpaid balance of the
loan will be accelerated and become due and payable immediately.
If the amount that becomes due and payable is not paid, foreclosure
proceedings may begin to acquire the Property by foreclosure and
sale. At this sale, Noteholder or another person may acquire the
Property. The method of foreclosure used will depend on the
prevailing method of foreclosure in the state in which the Property
is located.
In the event foreclosure proceedings are initiated, you have the
right to argue that you did keep the promises and agreements under
the Note and Security Instrument/Deed of Trust. You also have the
right to reinstate after acceleration and before sale and bring a
court action to assert the nonexistence of a default or any other
defense to acceleration and sale that you may have.

Text Viewer

03-06-10                                    MSF LETTERWRITER ACTIVITY FOR MONTH OF 02

# EXHIBIT C

 **HSBC** ◆❚◆

PLEASE NOTE THAT THIS IS AN ATTEMPT TO
COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

February 03, 2010

Mendel Reizes
Yehoshua Yusewitz
1615 Carroll Street
Brooklyn, NY 11213

Dear Mendel Reizes and Yehoshua Yusewitz :

NOTE:  IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION
IN BANKRUPTCY, THE FOLLOWING NOTICE IS FOR INFORMATION PURPOSES
ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.

Subject: Loan Account Number 5631440
         Property Address 1615 Carroll Street
                          Brooklyn NY 11213

This shall serve as formal notice that you are presently in default
under the terms of your Note and Security Instrument/Deed of Trust
securing the property referenced above.  Specifically, you have
failed to make the monthly payments on this Note as agreed.

To cure the default, the total amount due of $ 6,533.96 PLUS ANY
ADDITIONAL PAYMENTS, FEES AND LATE CHARGES THAT ACCUMULATE DURING
THIS PERIOD, must be received within 30 days from the date of this
letter.  This must be in the form of Certified Funds (Cashier's
Check, Certified Check or Money Order) only.

If you do not cure this default within the specified time period,
your obligation for payment of the entire unpaid balance of the
loan will be accelerated and become due and payable immediately.
If the amount that becomes due and payable is not paid, foreclosure
proceedings may begin to acquire the Property by foreclosure and
sale.  At this sale, Noteholder or another person may acquire the
Property.  The method of foreclosure used will depend on the
prevailing method of foreclosure in the state in which the Property
is located.

In the event foreclosure proceedings are initiated, you have the
right to argue that you did keep the promises and agreements under
the Note and Security Instrument/Deed of Trust.  You also have the
right to reinstate after acceleration and before sale and bring a
court action to assert the nonexistence of a default or any other
defense to acceleration and sale that you may have.

**HSBC Mortgage Corporation (USA)**
2929 Walden Avenue, Depew, New York 14043





Loan Account Number 5631440

Page 2

At any time after acceleration and before sale of the Property, you have the right to have enforcement of the Security Instrument/Deed of Trust discontinued and to have the Note and Security Instrument/Deed of Trust remain fully effective as if immediate payment in full had never been required provided you meet the following conditions:

A)   Pay Noteholder the full amount that would have been due under the Security Instrument/Deed of Trust if Noteholder had not required immediate payment in full; and

B)   Correct your failure to keep any promises or agreements made in the Security Instrument/Deed of Trust; and

C)   Pay all of Noteholder's reasonable expenses in enforcing the Security Instrument/Deed of Trust including, but not limited to, reasonable attorneys' fees; and

D)   Do whatever Noteholder reasonably requires to assure that Noteholder's rights in the Property, Noteholder's rights under the Security Instrument/Deed of Trust, and your obligations under the Note and Security Instrument/Deed of Trust continue unchanged.

It should be noted that under the terms of your Security Instrument/ Deed of Trust, in any foreclosure proceeding, you will be responsible to pay all expenses allowed by law; these may include reasonable attorney's fees and the cost of documentary evidence, abstracts, and title reports.  Please refer to your loan documents or consult an attorney concerning the rights and obligations you have in connection with the default described above.

Please call immediately at (800)338-6441 (toll-free) or (716)651-5538 to discuss reinstating your loan.

Sincerely,

Mrs. M. Munro

Mrs. M. Munro
Unit Manager
Default Servicing Department

HSBC Mortgage Corporation (USA)
2929 Walden Avenue, Depew, New York 14043





## THINGS YOU SHOULD CONSIDER ABOUT MORTGAGE LOAN DELINQUENCY AND FORECLOSURE

If you are considering foreclosure as an option to your current problem with your mortgage loan there are several things you should consider. THE FOLLOWING IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS LEGAL ADVICE. STATE LAW MAY VARY AND YOU MAY HAVE OTHER RIGHTS AND DUTIES NOT MENTIONED HERE. IF YOU HAVE QUESTIONS REGARDING HOW MORTGAGE LOAN DELINQUENCY AND FORECLOSURE MAY AFFECT YOU, YOU SHOULD CONSULT LEGAL AND/OR TAX PROFESSIONALS.

### POSSIBLE UNFAVORABLE CREDIT RATING

Mortgage loan delinquency and foreclosure will, in most cases, be reported to all of the major credit repositories in the United States. Once reported, this information about loan default becomes a part of your permanent credit file where it will remain for seven (7) years. This information can be disclosed to any party authorized to access your credit file. Mortgage loan delinquency and foreclosure is, in most cases, viewed negatively by credit lenders, insurance companies and prospective employers. This adverse credit rating may limit your ability to obtain all forms of credit including mortgage loans, consumer loans, and credit cards. FOR MORE INFORMATION REGARDING YOUR PERSONAL CREDIT RECORD YOU MAY CONSULT YOUR LOCAL CREDIT BUREAU OR YOUR ATTORNEY.

### POSSIBLE LEGAL LIABILITY

Foreclosure of your mortgage loan may not relieve you of responsibility for the debt. If your property does not bring a price at the foreclosure sale sufficient to satisfy your debt you may remain responsible for the balance owing after foreclosure. Subject to the laws of your state your lender may be entitled to bring an action to collect the balance owing after Foreclosure. Even though your lender may be insured against loss, their insurer may be in a position to bring suit against you to recover the balance. If this legal action is successful you could be ordered by a court to pay the balance plus attorney's fees and interest on the judgement amount. IF YOU HAVE QUESTIONS REGARDING YOUR LEGAL LIABILITY YOU SHOULD CONSULT YOUR ATTORNEY.

### POSSIBLE ADDITIONAL FEDERAL INCOME TAX LIABILITY

Certain lenders who acquire an interest in property that was security for a loan, or who have reason to know that such property has been abandoned, must report this information to the INTERNAL REVENUE SERVICE on IRS FORM 1099-A. You will be provided with a copy of this form. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition generally is measured by the difference between your adjusted basis in the property and the mount of your debt cancelled in exchange for the property, or if greater, the sale proceeds. If you abandoned the property you may have income from the discharge of indebtedness in the amount of the unpaid balmce of your cancelled debt. You may also have a loss from abandonment up to tbe adjusted basis of the property at the time of abandonment. Losses on acquisitions or abandonments of property held for personal use are not deductible. FOR MORE INFORMATION ON TAXES FROM ABANDONMENT OF SECURED PROPERTY YOU MAY CONSULT THE INTERNAL REVENUE SERVICE, YOUR TAX ADVISOR OR AN ATTORNEY.

**HSBC Mortgage Corporation (USA)**
2929 Walden Avenue, Depew, New York 14043

